NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | Bankruptcy Case No. 10-48815 |
| Glenn Worman | : | Chapter 7 |
| Debtor | : | |
| Rafael Davis and Elizabeth McConarty | : | |
| Plaintiff(s), | : | |
| vs. | : | Adversary No. 11-1532 |
| Glen Worman | : | **MEMORANDUM OPINION** |
| Defendant | : | |

**APPEARANCES**

PRO SE
Rafael Davis
Elizabeth McConarty
105 Island Road
Highland Lakes, New Jersey 07422

PRO SE
Glen Worman
109 Hainesburg River Road
Columbia, New Jersey 07832

Procedural History

Rafael Davis and Elizabeth McConarty ("Plaintiffs") filed a Complaint to Deny Dischargeability of Debt and cited to § 523 of the Bankruptcy Code. At trial, the Plaintiffs clarified that they were seeking a finding of non-dischargeability under 11 U.S.C. § 523(a)(2)(A). The court ordered the parties to participate in mediation, but it was unsuccessful.[1] The court took testimony on May 22, 2012, and reserved decision. The court issues the following findings of fact and conclusions of law in accordance with 28 U.S.C. § 157.

Findings of fact

The current dispute arises out of a home improvement contract. On September 3, 2006, the Plaintiffs signed a contract with Glen Worman Builders[2], a sole proprietorship operated by Glenn Worman, for construction and renovation work on their home at 105 Island Road, Highland Lakes, New Jersey ("Contract"). The total price set forth in the Contract was $107,300. The Contract provided that the Plaintiffs would pay a $20,000 deposit and a second payment of $20,000 "when footings dug and poured". The down payment was made by two checks: a $5,000 check dated September 3, 2006, and a $15,000 check dated September 15, 2006.[3] The second payment was made by a check in the amount of $20,717 dated October 19, 2006.[4]

The construction permit issued for the addition is dated October 5, 2006.[5] Work at the property began on September 25, 2006, including demolition of the deck and preparing to excavate the trenches for the footings. The Plaintiffs did not authorize Mr. Worman to begin

---

[1] Mediator's Certificate of Completion [Docket No. 27]
[2] Exhibit P-1. The Plaintiffs maintain that the contract was with Glen Worman individually not Glen Worman Builders, but resolution of that issue is not essential to the issues before the court.
[3] Exhibit P-4
[4] Exhibit P-8
[5] Exhibit P-5

2

work prior to obtaining all necessary permits. The fact that work on the property began before the permit was issued is supported by the fact that Mr. Worman rented an excavator on October 2, 2006, as well as an invoice for work on the property dated 9/29/2006.[6] Both a Building Subcode statement and an Inspection Activity Report issued by Vernon Township state that the footings that were inspected on October 17, 2006 failed inspection.[7] The trenches that were dug for the footings were not inspected prior to pouring the concrete, which is a violation of guidelines issued by the Vernon Township Building Department. But Vernon Township did not require the concrete footing that had been poured prior to inspection to be replaced. Vernon Township also never issued any fines for permit violations. When Mr. Worman requested the second payment of $20,717 all of the footings had not been dug and poured, and the footings that had been poured had not passed inspection. Mr. Worman and his sub-contractors did not continue to work at the property after November 7, 2006. The project was ultimately completed by another contractor.

## Conclusions of law

The Plaintiffs' complaint is captioned as a "Complaint to Deny Dischargeability of Debt", but the substance of the complaint is based on the New Jersey Consumer Fraud Act. An action under the New Jersey Consumer Fraud Act and § 523 of the Bankruptcy Code are not mutually exclusive, but a finding that Mr. Worman violated the New Jersey Consumer Fraud Act will be meaningless if the court cannot find in the Plaintiffs' favor under § 523 because any resulting award would be a pre-petition debt that would be discharged as a result of Mr. Worman's bankruptcy. For that reason, the court begins its analysis with § 523.

---

[6] Exhibits P-6; P-7
[7] Exhibits P-10; P-11

A debtor may not discharge fraudulently incurred debts, because a fundamental policy of the Bankruptcy Code is that relief from debt should be available to only an "honest but unfortunate debtor."[8] Section 523(a)(2)(A) excepts from discharge "any debt ... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud."[9] The Supreme Court has clarified that the phrase "to the extent obtained by" in § 523(a)(2)(A) modifies "money, property, [or] services" so that the exception encompasses "any debt ... for money, property, [or] services … to the extent [that the money, property, [or] services is] obtained by" fraud.[10]

In this case, the only "money, property, [or] services" Mr. Worman obtained from the Plaintiffs was the two payments totaling $40,717. The parties do not dispute that in September 2006 the Plaintiffs paid Mr. Worman a $20,000 deposit, and that in October 2006 they paid him an additional $20,717. Focusing on those two payments, the court must now determine if the other elements of § 523(a)(2)(A) have been satisfied.

To prevail under § 523(a)(2)(A) a creditor must prove the following elements by a preponderance of the evidence:

(1) the debtor represented a fact, opinion, intention or law;

(2) the representation was false;

(3) the representation was material;

(4) the debtor obtained money, property or services through the misrepresentation;

(5) the debtor knew at the time that the statement was false (or was made with reckless disregard for its truth);

(6) the debtor intended the creditor to rely on the statement;

(7) the creditor actually relied on the statement;

---

[8] Cohen v. de la Cruz, 523 U.S. 213 (1998)
[9] 11 U.S.C. § 523(a)(2)(A)
[10] Cohen, 523 U.S. at 218

    (8) the reliance was justified;

    (9) the creditor sustained damage; and

    (10) the damages were the proximate result of the false representation.[11]

The court will examine each payment individually to determine if the Plaintiffs have established these ten elements.

    Plaintiff's made the first payment of $20,000 pursuant to the terms of the Contract. Implicit in that Contract was Mr. Worman's representation that he intended to complete the work for which he was engaged, thus satisfying the first element (the debtor represented a fact). The next issue is whether that representation was false. The evidence presented at trial revealed that Mr. Worman began work at the job site on September 25, 2006, and continued to work intermittently until November 7, 2006. It was also established at trial that Mr. Worman ordered $6,000 worth of lumber to be delivered to the job site, and that he applied for building permits. The uncontroverted evidence that Mr. Worman began construction, ordered materials, and applied for permits, compels the conclusion that Mr. Worman did not make a false representation in September 2006 when the parties signed the Contract and the Plaintiffs made the down payment. The court finds that in September 2006 Mr. Worman intended to complete the renovations on the Plaintiffs' home. There is simply no evidence in the record to support a finding that Mr. Worman was a con-man who intended to abscond with the Plaintiffs' money without doing the work. As late as December 19, 2006, Mr. Worman sent an e-mail to Mr. Davis expressing his dismay that "we aren't able to come to come understanding here" and recommending "having someone tarp the entire house in case it snows."[12] Sending that e-mail is

---

[11] In re Goepp, 455 B.R. 388, 395-96 (Bankr D.N.J. 2011)

[12] Exhibit D-1

inconsistent with a finding that Mr. Worman intended to defraud the Plaintiffs from the date of the deposit checks.

It is well established in the law that a contractor's failure to perform as promised, standing alone, gives rise to a case for breach of contract, not actionable fraud, misrepresentation or false pretenses under § 523(a)(2)(A).[13] Were that not the case, virtually every debt arising out of a failure to complete a construction contract would be nondischargeable "and that is clearly not the way the statute is written or intended."[14] Instead, "to be actionable as fraud, the plaintiff must establish that the debtor entered into the contract with the intent of never complying with its terms."[15] Because the Plaintiffs have not established the second element (that the debtor's representation was false) they cannot sustain a § 523(a)(2)(A) cause of action with regard to the $20,000 down payment.[16]

The second payment of $20,717[17] was made on October 19, 2006. Ms. McConarty testified that she was at the property on that day and Mr. Worman told her that the payment was due. Mr. Worman does not deny that he requested the payment that day, therefore, the first element is satisfied (that the debtor made a representation). The next element under a § 523(a)(2)(A) analysis is whether Mr. Wormans' request for the second payment involved a false representation. Pursuant to the payment schedule in the Contract, the second payment was due "when footings dug and poured". Mr. Davis testified that prior to the pouring of the concrete he called Mr. Worman who assured him that everything "was good to go" with regard to the

---

[13] *See, e.g.*, In re Antonious, 358 B.R. 172, 182 (Bankr. E.D. Pa. 2006) ("mere breach of a construction contract alone does not establish fraud or misrepresentation for purposes of section 523(a)(2)(A)")
[14] In re Barr, 194 B.R. 1009, 1019 (Bankr. N.D. Ill. 1996)
[15] In re Maurer, 112 B.R. 710, 713 (Bankr. E.D. Pa. 1990)
[16] In re Giquinto, 388 B.R. 152, 165 (Bankr. E.D. Pa. 2008) (Plaintiffs must establish each element to prevail)
[17] The $20,000 was pursuant to the Contract and the $717 was for permits

footings. Ms. McConarty testified that Mr. Worman told her when she was at the property on October 19th that the footings were complete and the second payment was due. The testimony of all the parties makes clear that on October 19, 2006, when Ms. McConarty gave Mr. Worman the second payment of $20,717 all of the footings had not been dug and poured. Mr. Worman himself testified that his workers did not pour two of the footings: one because of its proximity to a tree, and another because of its proximity to a well. That standing alone is enough for the court to conclude that Mr. Worman obtained the second payment as a result of a false representation (satisfying the second element).

Alternatively, the court could find on this record that there was a false representation because of the inspection issue. The Plaintiffs argue that the second payment was not due until the footings were "completed" and that would include any required inspections. The Contract does not mention inspections as a factor in when a scheduled payment is due, but the court agrees that would be a natural reading of the Contract. The Contract at issue here is highly informal – many essential terms are not addressed - so the failure to mention inspections is not fatal to the Plaintiffs' interpretation of the Contract. It is a bedrock contractual concept that all contracts include an implicit agreement that the parties will act in good faith.[18] It would violate that good faith covenant for a contractor to perform work in a manner that violates a town's building codes. Mr. Worman testified that he had oral approval from an inspector to pour the concrete. When questioned on the issue on cross-examination, it was revealed that Mr. Worman was unaware of the name of the inspector, and it was his sub-contractor and not he himself who allegedly received the oral approval of the trenches for the footings. Mr. Worman's position that he had approval for the footings is also inconsistent with the documentary evidence. Both a "Building Subcode" statement and an "Inspection Activity Report" issued by Vernon Township

---

[18] Wilson v. Amerada Hess Corp., 168 N.J. 236 (2001)

state that when the footings were inspected on October 17, 2006, they failed inspection.[19] Accordingly, two days later when Mr. Worman requested the second contractual payment, it was not due because all of the footings had not been "dug and poured" and approved by the town. That qualifies as a false representation under § 523(a)(2)(A).

The next issue was whether the false representation was material. Courts have held that "[t]he threshold of materiality is fairly low."[20] The court finds that this misrepresentation was material because if the lack of official inspection and two missing footings had been revealed, it is highly unlikely that the Plaintiffs would have made the second payment. Which brings the court to the next element: did the debtor know at the time that the statement was false, or was the statement made with reckless disregard for its truth. Mr. Worman's testimony established that he thought the lack of formal inspection of the footing trenches prior to the pouring of the first round of concrete was not a problem. It is clear that Mr. Worman had a much more fluid view of the importance of adhering to formalities than the Plaintiffs. So while the court cannot find that Mr. Worman believed he was making a false statement when he asked for the second payment, the court can find that the request was made with reckless disregard for its truth (satisfying the fifth element). The court can also find on this record that Mr. Worman intended the Plaintiffs to rely on his statement that the second payment was due, and that they justifiably relied to their detriment (satisfying elements six – nine).

The final element that the Plaintiffs must establish to prevail on a § 523(a)(2)(A) cause of action is that the damages were the proximate result of the false representation  Ms. McConarty testified that the costs directly attributable to the footings were $400 for the new contractor to dig around the footings Mr. Worman had done so they could be re-inspected, and

---

[19] Exhibits P-10; P-11
[20] In re Sears, 246 B.R. 341, 347 (8th Cir. B.A.P. 2000)

$200 the new contractor charged to complete the two remaining footings.[21] The payment of the second installment of $20,000 was also the direct result of the misrepresentation. But as to the other damages claimed, the court finds that the Plaintiffs have not sustained their burden of proof. The court finds that the costs for the new contractor to complete the project where not the proximate result of Mr. Worman's false representation regarding completing the footings or having the trenches inspected.

The evidence adduced at trial, most notably the e-mails the parties exchanged[22], demonstrates that the standstill with work was the result of a disagreement between the parties regarding changes to the plans and whether additional payments were required. No evidence was presented to support a finding that the breakdown in communications and the need to hire a new contractor to complete the project were the direct result of the failure to have the footing trenches inspected prior to pouring the concrete. To the contrary, this appears to be a garden variety contract dispute over the parties understanding of what is and is not included in a home improvement project. As previously noted, "mere breach of a construction contract alone does not establish fraud or misrepresentation for purposes of section 523(a)(2)(A)".[23]

The court also finds that the record does not support a finding that any of the violations of the New Jersey Consumer Fraud Act specified in the Complaint satisfy the standards under § 523(a)(2)(A). Technical violations of a statutory scheme, such as the New Jersey Consumer Fraud Act, are not the types of "fraud" that results in debts being exempted from discharge. To be actionable for purposes of §523(a)(2)(A), the "debtor's conduct must involve moral turpitude or intentional wrong; mere negligence, poor business judgment or **fraud**

---

[21] Exhibit P-47
[22] Exhibit P-15
[23] In re Antonious, 358 B.R. 172, 182 (Bankr. E.D. Pa. 2006)

**implied in law** … is insufficient."[24] So, for example, Mr. Worman's failure to have the contract printed on letterhead, although a violation of the NJ Consumer Fraud Act, does not satisfy the ten elements required under § 523(a)(2)(A).

Accordingly, the court will enter a non-dischargeable judgment in the Plaintiffs favor in the amount of $20,600.[25]

/s/ Kathryn C. Ferguson
KATHRYN C. FERGUSON
US Bankruptcy Judge

Dated:  September 14, 2012

---

[24] In re Singh, 433 B.R. 139 (Bankr. E.D. Pa. 2010) (emphasis added)
[25] That figure was arrived at by adding the $600 in costs associated with the footings and the $20,000 second payment.  The $717 portion of the second payment was not included because that related to costs associated with obtaining the permits.